**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **GUARANTEE TRUST LIFE INSURANCE COMPANY,** an Illinois mutual insurance company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 05 C 1261<br>) |
| **FIRST STUDENT PROGRAMS, LLC,** a Pennsylvania limited liability company, | ) Judge Rebecca Pallmeyer<br>)<br>) |
| Defendant/Third-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| **AMERICAN UNITED LIFE INSURANCE COMPANY,** an Indiana stock insurance company, | )<br>)<br>)<br>) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Guarantee Trust Life Insurance Company ("GTL"), an insurance company, sells health insurance to college students. To distribute the risk associated with offering this insurance program, called "College Book," for the 2001-2002 school year, GTL obtained reinsurance from Third-Party Plaintiff First Student Programs, LLC ("FSP"). The agreement between GTL and FSP obligated FSP to obtain further reinsurance as security for FSP's stake. FSP claims it approached Third-Party Defendant American United Life Insurance Company ("AUL") and that AUL agreed to provide GTL the excess reinsurance. FSP allegedly paid monthly premiums to AUL for providing this excess reinsurance coverage, but when claims became due, AUL failed to honor the insurance commitment. GTL brought suit against FSP for FSP's failure to obtain reinsurance, and FSP in turn filed a five-count Third-Party Complaint against AUL, alleging that AUL breached agreements with FSP and GTL. GTL has now settled its claims with FSP, and AUL has moved to dismiss the Third-

Party Complaint. For the reasons that follow, AUL's motion is granted in part and denied without prejudice in part.

**FACTUAL BACKGROUND**

GTL is an insurance provider that sells, among other insurance products, a health insurance line marketed to college students and referred to here as GTL's "College Book." (Am. Compl. ¶¶ 4, 8.) GTL sued FSP for breach of a Risk-Sharing Agreement in which FSP agreed to hold 75% of the financial risk associated with the College Book business for the 2001-2002 school year. (3d Party Compl. ¶ 4.) GTL also alleged that FSP had assured GTC that it had obtained excess reinsurance as security for FSP's obligations. (Am. Compl. ¶ 23.) Specifically, FSP agreed to obtain a 120% portfolio aggregate cover from AUL, essentially meaning that AUL would insure GTL, on those claims covered by FSP, for claims paid in excess of 120% of the total amount that GTL collected in premiums.[1] (*Id.*) GTL held FSP responsible for AUL's failure to pay those claims when they ultimately became due. (3d Party Compl. ¶ 6.)

In its third-party action, FSP contends that AUL both knew that FSP had agreed to obtain the excess reinsurance through AUL and then "represented" to FSP that AUL would in fact provide GTL with the excess reinsurance. (*Id.* ¶¶ 8, 9.) FSP claims that AUL's representations constitute a binding agreement for AUL to provide the excess reinsurance, and that FSP relied on this representation when it paid monthly premiums to AUL. (*Id.* ¶¶ 11, 12.) FSP asserts claims for breach of contract; for detrimental reliance; for fraud; for indemnification and contribution; and for recovery as third-party beneficiary to a contract between AUL and GTL.[2] After briefing on this

---

[1] In a slight discrepancy with GTL's claims, FSP apparently asserts that AUL agreed to insure GTL for *all* claims in excess of 120%, not just for the 75% of claims retained by FSP. (3d Party Compl. ¶ 9.)

[2] The Third-Party Complaint apparently alleges, or at least argues in the alternative, that both GTL and FSP had separate contracts with AUL to provide the same excess reinsurance coverage for College Book. (*Compare* 3d Party Compl. ¶ 29 ("FSP is third party beneficiary of
(continued...)

motion was complete, FSP and GTL settled GTL's claims against FSP, without prejudice to FSP's third-party complaint against AUL. (Agreed Order of Dismissal [140].)

AUL moves to dismiss the Third-Party Complaint. AUL first argues that the complaint fails to state a claim upon which relief can be granted. In addition, AUL contends that FSP's claims are barred by the doctrine of *res judicata*. Specifically, in an earlier dispute between GTL and AUL, an arbitrator found no credible evidence of a binding agreement between those two parties for AUL to provide excess reinsurance coverage for the 2001-2002 College Book product. (Interim Award of Arbitrator at 5, Ex. 4 to Mot. to Dismiss.) According to AUL, the arbitrator's conclusion—that AUL had no binding agreement to provide excess reinsurance—precludes FSP's suit against AUL, as well.

## **DISCUSSION**

When deciding a motion to dismiss, the court accepts as true the well-pleaded allegations of the complaint. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In addition, the court draws all reasonable inferences in favor of the non-moving party. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). Generally, the allegations in the complaint need not be pleaded with particularity, and a "short and plain statement of the claim showing that the pleader is entitled to relief" will suffice. FED. R. CIV. P. 8(a)(2); *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008). When alleging fraud, however, a plaintiff must state "with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 705 (7th Cir. 2008). Before turning to the *res judicata* defense, the court considers whether FSP has stated a claim on which relief can be granted.

---

[2](...continued)
AUL's contractual obligation to provide Excess Reinsurance to GTL") *with* 3d Party Compl. ¶ 15 ("AUL entered into a binding contract with FSP to provide Excess Reinsurance")).

**I.      Failure to State a Claim**

As a preliminary matter, the court must decide what state's laws govern the state-law claims advanced by FSP. As jurisdiction in this matter is premised on diversity, the choice-of-law rules of Illinois apply. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("Because plaintiffs' claims rest on state law, the choice-of-law rules come from the state in which the federal court sits.") Illinois, employing the Second Restatement of Conflict of Laws, considers five factors in determining what law to apply in a breach of contract case: the place of the contracting; the place of the negotiations; the place of performance; the location of the contract's subject matter; and the locations of the parties. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 211, 835 N.E.2d 801, 867 (2005); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971).

FSP is a Pennsylvania-based corporation and AUL is incorporated in Indiana, where it also has its principal place of business. (3d Party Compl. ¶¶ 1, 2.) Allegations that FSP performed on the contract by sending AUL monthly premiums would favor application of the law of either Pennsylvania (the source of the payments) or Indiana (the recipient of the payments). As for the other factors, the court does not know, based on the Third-Party Complaint, where the contracting or negotiations took place, nor can the subject matter of excess reinsurance be said to be located in any particular place. The factors identified by the Illinois courts thus split evenly between an application of Pennsylvania or Indiana law. The Restatement, however, also directs the court to apply the law of the state with "the most significant relationship to the transaction and the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1). With this in mind, the court notes that the arbitrator determining the GTL/AUL matter applied Pennsylvania law based on both a choice-of-law provision in an earlier contract between GTL and AUL,[3] as well as on FSP's involvement in the matter generally. (Mem. in Supp. [127] at 5.) Additionally, AUL and GTL both applied Pennsylvania

---

[3] This earlier GTL/AUL contract is not otherwise relevant to the court's consideration of the motion to dismiss.

law in their briefs before this court. Because Illinois choice-of-law rules would favor application of either Indiana or Pennsylvania law and the parties appear to assume that Pennsylvania law applies, the court will apply Pennsylvania law to the state claims advanced in FSP's Third-Party Complaint. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (choice of law should protect "justified expectations" of the parties).

### A. Breach of Contract

FSP contends that it entered into a binding contract with AUL for the latter to provide excess reinsurance coverage for the 2001-2002 College Book product offered by GTL. (3d Party Compl. ¶ 15.) AUL argues that the breach of contract count should be dismissed because FSP acted merely as an agent for GTL, and agents are not entitled to sue for breach of an agreement they entered on behalf of their principals. *See Gross v. Lundy*, 87 Pa. Super. 78, 81 (Pa. Super. Ct. 1925) ("The general rule is that when an agent makes a contract with a third person . . . no cause of action for its breach subsists in favor of the agent . . . .") (citation omitted). In support of its allegation that FSP was in fact acting as GTL's agent at the time the alleged agreement with AUL was made, AUL cites GTL's First Amended Complaint. (Am. Compl. ¶ 1.) FSP, however, denied this allegation in its response to GTL's complaint and maintains that it was not acting as GTL's agent in its negotiations with AUL. (Def.'s Answer [102] ¶ 1.)

The existence of an agency relationship is normally a question of fact for the jury. *B & L Asphalt Indus., Inc. v. Fusco*, 2000 PA Super. 148, 753 A.2d 264, 269 (Pa. Super. Ct. 2000). "Where, however, the facts relating to the nature and existence of the agency relationship are not contested, the court may properly decide the issue." *Great Northern Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 746 (W.D. Pa. 2007). FSP not only denies the existence of an agency relationship, but at this point, the facts that would enable the court to decide whether such a relationship existed are unclear. Most notably, the record does not reveal the precise nature of the relationship between the three parties; whether and to what extent FSP approached AUL on behalf

5

of GTL; or AUL's understanding of the identity of the party with whom it was (allegedly) contracting. Based on the facts that are currently apparent from the record, and drawing all reasonable inferences in favor of FSP, the court cannot conclude, as a matter of law, that FSP was acting as an agent for GTL in its dealings with AUL. FSP's breach of contract claim thus survives AUL's motion to dismiss.

### B. Detrimental Reliance/Promissory Estoppel

AUL next contends that FSP has failed to state a claim for promissory estoppel. To state a claim for promissory estoppel under Pennsylvania law, a plaintiff must show that:

> 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.

*Edwards v. Wyatt*, 335 F.3d 261, 277 (3d Cir. 2003) (quoting *Crouse v Cyclops Indus.*, 560 Pa. 394, 403, 745 A.2d 606, 610 (2000)). FSP's complaint alleges that AUL "represented" that it was providing excess reinsurance for GTL and that FSP relied on this representation when it made monthly premium payments, which AUL accepted; if these allegations are proven, then enforcement of the promise would be necessary to avoid injustice.

AUL argues that an action for promissory estoppel is nevertheless improper here because the alleged promise to FSP is vague and unenforceable. Under Pennsylvania law, the doctrine of promissory estoppel is not available to enforce a "broad and vague implied promise." *C & K Petroleum Prods., Inc. v. Equibank*, 839 F.2d 188, 192 (3d Cir. 1988). According to AUL, the alleged "representation" it made to FSP constitutes such a vague promise. The facts of *C & K Petroleum*, however, are readily distinguishable. In *C & K Petroleum*, the court affirmed dismissal of a detrimental reliance claim where the defendant bank allegedly violated, in the words of the complaint, an "implied promise to administer" a checking account "in the normal, banking fashion." *Id.* FSP presents no similar vague and implied promise. To the contrary, FSP maintains that AUL

6

made an explicit representation to FSP that it was providing the necessary reinsurance, and further that FSP paid monthly premiums to AUL in reliance on that representation. This clearly sets it apart from a vague implied promise of the kind condemned in *C & K Petroleum*, the very existence of which is often difficult to prove. FSP has therefore sufficiently pleaded a claim for promissory estoppel.

### C. Fraud

As noted above, a plaintiff alleging fraud must plead particular facts showing that it is entitled to relief. *See Makor Issues & Rights*, 513 F.3d at 705. The particularity required includes "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply*, 536 F.3d at 668 (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)).[4] FSP has pleaded none of these facts. FSP claims only that AUL "represented to FSP that it was insuring GTL for all claims in excess of 120% of the collected gross premiums." (3d Party Compl. ¶ 9). The Complaint nowhere states, however, who at AUL made those representations; when and where the representations were made; what was specifically communicated; or even whether the communication was oral, written, or both. Plaintiff has failed to plead the fraud count with the necessary particularity.

FSP's fraud claim is also deficient because it is barred by the "gist of the action" doctrine. Under Pennsylvania law, this doctrine prohibits a fraud claim where: 1) the claim is based solely on the contractual relationship between the parties; 2) the breached duties were grounded in the alleged contract; 3) liability stems from the contract; and 4) the success of the fraud claim is

---

[4] Although, for the reasons stated above, the substantive cause of action for fraud would be governed by Pennsylvania law, the pleading requirements are governed by the Federal Rules of Civil Procedure. *See, e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) (citing *Hanna v. Plumer*, 308 U.S. 460, 467-68, 471 (1965)).

dependent upon the breach of contract claim. *Strausser v. PRAMCO, III*, 2008 PA Super. 28, 944 A.2d 761, 767 (Pa. Super. Ct. 2008) (citations omitted). FSP's fraud claim fits squarely within this doctrine, as the representations that FSP claims are fraudulent—namely, AUL's representation that it had procured excess reinsurance for GTL's College Book—are the same representations that FSP claims constituted the contract between FSP and AUL. The court thus dismisses FSP's fraud claim as both inadequately pleaded and as substantively barred by Pennsylvania law.

### D. Indemnification and Contribution

FSP's claims for indemnification and contribution are expressly conditioned upon a finding that FSP is liable to GTL. In the Third-Party Complaint, FSP's claim for indemnification and contribution states: "To the extent FSP is found liable to GTL for any monies, AUL is liable to FSP, by way of indemnification and contribution, for any such damages." (3d Party Compl. ¶ 26.) As noted above, FSP and GTL have settled the matter as between them. Accordingly, there can be no finding of liability against FSP for which AUL could then indemnify or provide contribution. As a Pennsylvania state court observed,

> It is well settled that voluntary payments in exchange for the compromise of a claim are not compulsory and do not entitle the paying party to a claim for subrogation or indemnity. . . . To be entitled to indemnity where there has been a voluntary payment, the paying party must demonstrate that he or she was legally liable and could have been compelled to satisfy the claim.

*Kemper Nat'l P & C Cos. v. Smith*, 419 Pa. Super. 295, 302, 615 A.2d 372, 376 (Pa. Super. Ct. 1992) (citing *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 20, 5 A.2d 153, 155 (1939)); *cf. Richardson v. John F. Kennedy Mem'l Hosp.*, 838 F. Supp. 979, 989 (E.D. Pa. 1993) (cross-claimant "has no right to contribution and/or indemnification" where the "cross-claim is expressly made conditional upon [the cross-claimant] being found liable to plaintiff" and the cross-claimant is found not liable). The court therefore dismisses Count IV of the Third-Party Complaint.

### E. Third-Party Beneficiary

Finally, FSP alleges that it is a third-party beneficiary of a contract between AUL and GTL.

8

For a party to sue as a third-party beneficiary of a contract, the contract usually must contain language making it clear that both parties intended for the third party to benefit as a result of the contract. *Scarpitti v. Weborg*, 530 Pa. 366, 372-73, 609 A.2d 147, 150 (1992) (citation omitted). As the Third-Party Complaint contains no allegations as to what terms the alleged contract between AUL and GTL contained, FSP cannot claim to be a beneficiary clearly contemplated by the contract's terms.

Rather, FSP argues that it fits into an exception to the general rule requiring an explicit contract term: a party can sue as a third-party beneficiary without being explicitly contemplated in the contract itself if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Id.* at 373, 609 A.2d at 150-51. FSP argues that GTL knew of FSP's intention to gain excess reinsurance and so GTL knew that excess reinsurance would benefit FSP.

Even if the court accepted these assertions of GTL's knowledge as true, FSP has not met the standard annunciated above. At most, FSP's argument shows that GTL "knew that Excess Reinsurance being in place would benefit FSP" (Mem. in Opp'n [132] at 8); it does not follow from this, however, that GTL actually *intended* to benefit FSP by obtaining excess reinsurance from AUL. Instead, the circumstances indicate that if a contract between GTL and AUL existed,[5] GTL would have obtained such a contract as greater security for its own College Book product and did not intend to benefit FSP. Thus, even granting FSP all *reasonable* inferences, FSP does not fit into any exception that would permit it to maintain a cause of action as a third-party beneficiary under Pennsylvania law. Count V of the Third-Party Complaint is dismissed.

**II.** ***Res Judicata***

---

[5] As noted above, the arbitrator concluded that no such GTL/AUL contract existed.

The court declines to consider AUL's argument that the entire complaint is barred by *res judicata*. When the parties briefed this motion, AUL had filed a motion to confirm the arbitration award before another judge in the Northern District of Illinois, but the motion was still pending. In their briefs to this court, the parties assume that the *res judicata* law of Pennsylvania applies, evidently because the claims themselves, both in the arbitration and in FSP's complaint, were governed exclusively by Pennsylvania law.[6]  *See* 18B C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4475.1 (2d ed. 2002). Since the briefing on this motion was completed, however, Judge Leinenweber confirmed the arbitral award. *Guarantee Trust Life Ins. Co. v. American United Life Ins. Co.*, No. 08 C 3103 (N.D. Ill. Oct. 30, 2008) (judgment confirming arbitral award). Had a state court confirmed the award, this court would be bound to give full faith and credit to the state court's judgment enforcing the award and would therefore apply that state's *res judicata* law. *See* 28 U.S.C. § 1738; *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991). In this case, however, the award was confirmed by a federal district court, and federal common law therefore governs the *res judicata* defense. Even though this situation involves a federal court decision and does not implicate the full faith and credit statute, federal law is still implicated by the interest in vindicating the judgment entered in federal court. *See Taylor v. Sturgell*, --- U.S. ---, 128 S. Ct. 2161, 2171 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001) (U.S. Supreme Court "has the last word on the claim-preclusive effect of *all* federal judgments") (emphasis in the original). The court is therefore bound to apply the federal common law of *res judicata*.

Neither party has addressed the federal common law of *res judicata*. In light of both this lack of briefing and the Supreme Court's recent decision in *Taylor v. Sturgell*, the court concludes

---

[6] AUL also considers that Indiana or Illinois might apply and concludes that the claim preclusion law of either state would be applied in the same manner as Pennsylvania law.

that the parties should be allowed to brief these issues before the court makes a ruling. The court thus denies the remainder of the motion to dismiss without prejudice. The parties are invited to readdress the issue of *res judicata*, applying the federal common law standard rather than the law of Pennsylvania. The parties are also invited to address the applicability, if any, of *Taylor v. Sturgell*, --- U.S. ---, 128 S. Ct. 2161 (2008).

## **CONCLUSION**

AUL's Motion to Dismiss FSP's Third-Party Complaint [126] is granted as to Counts III, IV, and V and is otherwise denied without prejudice.

ENTER:

Dated: January 28, 2009

_____
REBECCA R. PALLMEYER
United States District Judge